[598 NYS2d 524]

SION ELGHANAYAN et al., Appellants, and KARMEL ELGHA-
NAYAN et al., Intervenors-Appellants, v AGHADJAN ELGHA-
NAYAN et al., Respondents.

First Department, June 10, 1993

**APPEARANCES OF COUNSEL**

*Thomas A. Holman* of counsel, New York City *(Marshall Beil* and *Alla Roytberg* with him on the brief; *Lefrak Newman & Myerson,* attorneys), for Sion Elghanayan and another, appellants.

*Ronald D. Hariri* of counsel, New York City *(Alexander Aghayan & Associates,* attorneys), for Nedjatollah Elghanayan, appellant.

*Lewis S. Sandler* of counsel, New York City *(Beigel & Sandler,* attorneys), for intervenors-appellants.

*Robert W. Gottlieb* of counsel, New York City *(Rosenman & Colin,* attorneys), for Aghadjan Elghanayan and others, respondents.

*Jay R. Fialkoff* of counsel, New York City *(Anthony I. Pye*

with him on the brief; *Stroock & Stroock & Lavan,* attorneys), for Nourollah Elghanayan and others, respondents.

*Alan R. Friedman* and *Ronald S. Greenberg* of counsel, New York City *(Kramer, Levin, Naftalis, Nessen, Kamin & Frankel,* attorneys), for H. Houshang Elghanayan, and others, respondents.

*Stephen C. Pascal, P. C.,* New York City, for Jeffrey Elghanayan, respondent.

## OPINION OF THE COURT

MILONAS, J.

Plaintiffs and the three principal defendants, consisting of six brothers and another, now-deceased, brother formed a family partnership in the 1930's in their native country, Iran. In 1959, they reduced their business relationship into a written agreement. The document, which was drawn up in Farsi and signed in Teheran, provides that the four older siblings, defendants Aghadjan, Davoud, Nourollah and the late Habib Elghanayan, would each own a 20% share of the business while the three younger brothers, plaintiffs Sion, Ataollah and Nedjatollah Elghanayan, would divide among themselves the one remaining 20% share. Plaintiffs allege that it was also orally agreed that Iranian law and custom would govern the arrangement. The unequal distribution, it should be noted, reflected the status accorded to older family members under Iranian culture and tradition, and plaintiffs assert that they had full confidence, faith and trust in their brothers and left the management of the partnership entirely within their province. In any event, the business was extremely successful and expanded globally from its base in Iran.

By the time of the Islamic revolution, all of the brothers, with the exception of Habib, had left Iran; the family is Jewish, and they anticipated great difficulties if they remained. Indeed, Habib was detained by the authorities and then executed in 1979. While the family's property in Iran was confiscated, the extensive holdings of the partnership outside of Iran were not affected. However, the loss of the Iranian part of the business apparently caused financial hardship primarily to the younger brothers whose major responsibility was to run this aspect of the partnership. Plaintiffs claim that in accordance with instructions from their elders, they had over the years transferred millions of dollars in

profit from Iran to accounts out of the country. Since they purportedly always did as they were told, they turned to their brothers when they found themselves short of funds.

The dispute over the younger brothers' need for money eventually ended up in either mediation or arbitration before a group of Iranian businessmen, there being disagreement as to whether or not the proceeding was binding. Whatever it was, all concede that the mediation or arbitration, which took place in New York City in 1982, was unsuccessful, and the brothers tried over the next seven years to resolve their differences. There was some litigation, unrelated to the instant matter, between members of the family in the 1980's. Finally, in 1990, when it had become evident that no solution was forthcoming, this action ensued. The intervening plaintiffs are the children and heirs of Habib Elghanayan. At the time of Habib's death, three of his four children were residing in the United States and the fourth moved here shortly thereafter. It is their contention that, in common with the younger brothers, Habib's children have not received their 20% share of the family partnership's assets, but, unlike the brothers, the children were never aware that they were entitled to anything. The intervening plaintiffs claim that despite inquiries to their uncles about the disposition of their father's vast fortune, they have consistently been told by defendants that all but a small portion of their father's fortune was lost as a result of the Iranian revolution.

Defendants ultimately moved to dismiss the second amended complaint on the ground that the action is time barred by the applicable Statute of Limitations, that the claims of two of the plaintiffs are precluded by an arbitration award, that there were prior general releases by Sion and Ataollah to Nourollah and Davoud and that the intervening plaintiffs lack standing because they are not the legal representatives of Habib's estate. Before the Supreme Court rendered its decision, a third amended complaint was proposed, followed by a fourth version. Yet, when the court made its determination, it did so on the Statute of Limitations ground, concluding that "the cause of action of the main plaintiffs accrued at the latest when plaintiffs participated in utilization of the Iranian elders for a resolution of their dispute with their defendant brothers, and thereafter accepted the benefits of the resulting award" and was, thus, time barred. As for the other plaintiffs, the court observed that: "In their capacity as individuals, the intervening plaintiffs have not provided stat-

utes or established that under Iranian law they may commence an action as heirs to property allegedly owed to their father. This Court must then look to New York law, which provides such a right only to a legal representative of the estate, not heirs. * * * With respect to the recent appointment of Karmel and Sina as administrators of their father's estate, such appointment came too late. The cause of action of the estate accrued in 1979, when their father Habib died, and since the six (6) years statute of limitations has expired, once again, the claim is barred by the Statute of Limitations. In light of the foregoing decision, the motion by the intervening plaintiffs for amendment of the complaint * * * is denied."

There is no dispute between the parties that the applicable limitations period for plaintiffs' major claim, a partnership accounting, is six years (CPLR 213). Further, unlike substantive issues, which are generally determined by the law of the locus of the partnership (see, Schultz v Boy Scouts, 65 NY2d 189, 195), "Statutes of Limitations have traditionally been characterized as procedural. * * * Since under common-law rules matters of procedure are governed by the law of the forum, it has generally been held that the Statute of Limitations of the forum rather than that of the jurisdiction where the cause of action accrued governs the timeliness of a cause of action" (Martin v Dierck Equip. Co., 43 NY2d 583, 588). The parties, however, diverge as to whether and/or when the claims accrued. In that regard, defendants urge that plaintiffs' causes of action arose upon the dissolution of the partnership, which, they assert, under New York law occurred in 1979 upon the death of Habib and the confiscation of the Iranian property. Plaintiffs, on the other hand, argue that under the law of Iran, where the partnership was created and which is by agreement the jurisdiction whose law governs, there has been no dissolution. According to plaintiffs, the death of a partner does not automatically terminate a partnership in Iran.

The Supreme Court, in granting dismissal, held that "[d]issolution of the partnership is * * * unnecessary for accrual of an accounting cause of action and review of Iranian law as to that issue is not needed", and "[s]ince the accrual date need not be determined by dissolution, commencement of the Statute of Limitations must be determined based on New York law * * * 'when the plaintiff first became enabled to maintain the particular action in question' " (quoting Afshar v Procon Inc., 442 F Supp 887, 890). Yet, so long as a partnership

remains in existence, any partner has the right to a formal accounting (Partnership Law § 44). Nonetheless, the Supreme Court, by finding that the cause of action of the main plaintiffs accrued at the latest when the Iranian elders mediated or arbitrated the discord between the brothers, effectively limited what is a continuing right to an accounting by a partner during the life of the partnership.

The court, without reaching the matter of dissolution, somehow decided that even if the partnership was not defunct, plaintiffs were required to seek an accounting no later than at the time of the mediation or arbitration. While it is certainly possible that the 1982 attempt at resolving the family's quarrels amounted to a binding settlement of the parties' financial dispute up until the time of the meeting by the Iranian elders, assuming that it was an arbitration that occurred, plaintiffs would still retain the right to obtain an accounting of the partnership's business affairs for the period following that proceeding. There is no authority for the Supreme Court's apparent belief that a partner only has a one-time right to an accounting which, in this instance, was determined to commence in 1982 notwithstanding that there is a question of fact as to whether a mediation or arbitration was actually involved. At any rate, contrary to the court's conclusion, the crux of this litigation is the applicability of Iranian law and the date of dissolution, if any. No court has yet considered the issue of whether it is the law of Iran, where the agreement was signed, or of the forum jurisdiction, New York, that is crucial to ascertaining the current condition of the partnership. If, as plaintiffs contend, Iranian law is relevant, then it is necessary to examine the law of Iran as "[i]t is well settled that 'a foreign corporation is controlled, as to its dissolution, by the laws of its domicile, and is not affected by laws which are intended to govern the dissolution of corporations created under local laws' " *(Matter of Warde-McCann v Commex, Ltd.,* 135 AD2d 541, 542).

Plaintiffs, significantly, also argue that even if defendants are correct in claiming that it is New York law that is decisive in relation to the dissolution of a partnership, the latter fail to acknowledge that a new "partnership at will" is created whenever the remaining partners continue in business *(Peirez v Queens P.E.P. Assocs. Corp.,* 148 AD2d 596; *Burger, Kurzman, Kaplan & Stuchin v Kurzman,* 139 AD2d 422). It is true that New York law seems to recognize a "partnership at will" under certain circumstances. Moreover, there is no

authority for the proposition that the 1982 mediation or arbitration, without more, resulted in a dissolution of the partnership, and the Supreme Court never found that there was a dissolution. Indeed, the court did not reach any of the issues concerning dissolution; it simply granted summary judgment dismissal for no other reason than that in 1982 the fractious brothers made an effort at reconciling their disagreements. This was improper. Defendants' motions cannot be appropriately disposed of without a determination of the issues raised in connection with the dissolution or nondissolution of the subject partnership. If it is ultimately established that the partnership survived the death of Habib, then the nature and extent of the 1982 proceeding become critical in deciding which, if any, causes of action, or portions thereof, are barred on Statute of Limitations grounds.

■ Finally, the intervening plaintiffs have the standing to sue. This action is not for wrongful death or other claims being asserted on behalf of Habib's estate requiring the appointment of a personal representative (EPTL 11-3.2 [b]) but is being brought in their own names to secure what they perceive is due to them as his heirs. The causes of action asserted by the intervening plaintiffs are not alleged to have arisen before Habib's death and, therefore, could not have abated on his death so that EPTL 11-3.2 is not applicable here. Accordingly, the intervening plaintiffs are in exactly the position as the main plaintiffs insofar as their right to maintain this action is concerned.

Consequently, the order of the Supreme Court, New York County (William J. Davis, J.), entered on or about October 26, 1992, which granted defendants' motions to dismiss the complaint, converted by the court into motions for summary judgment, granted plaintiffs' cross motion to delete Nedjatollah Elghanayan as a defendant and add him as a plaintiff and denied the motion by the intervening plaintiffs to amend the complaint, is reversed, on the law, to the extent appealed from, defendants' motions to dismiss denied, the intervenors' action reinstated and their motion to amend the complaint granted, with costs and disbursements.

SULLIVAN, J. P., ROSENBERGER and ELLERIN, JJ., concur.

Order of the Supreme Court, New York County, entered on or about October 26, 1992, which granted defendants' motions to dismiss the complaint, converted by the court into motions for summary judgment, granted plaintiffs' cross motion to

delete Nedjatollah Eleghanayan as a defendant and add him as a plaintiff and denied the motion by the intervening plaintiffs to amend the complaint, is reversed, on the law, to the extent appealed from, defendants' motions to dismiss denied, the intervenors' action reinstated and their motion to amend the complaint granted, with costs and disbursements.